The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 21, 2019

**2019COA44**

**No. 17CA2160, *Whiting-Turner v. Guarantee Co. of N. Am. USA* — Construction Law — Suretyship and Guaranty — Performance Bonds; Contracts — Condition Precedent**

For the first time in Colorado, a division of the court of appeals applies to surety bonds cases the contract law principles governing a party's satisfaction of conditions precedent. In addition, the division considers the proper calculation of the "Balance of the Contract Price," which is a key term in the standard form of surety bond used throughout the construction industry. The division affirms the trial court's finding that the general contractor satisfied the conditions precedent in the surety bond and thus triggered the surety's obligation to perform.

Court of Appeals No. 17CA2160
City and County of Denver District Court No. 14CV34166
Honorable Andrew P. McCallin, Judge

_____

Whiting-Turner Contracting Company,

Third-Party Plaintiff-Appellee,

v.

Guarantee Company of North America USA,

Third-Party Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE LIPINSKY
Dailey and Furman, JJ., concur

Announced March 21, 2019

_____

Husch Blackwell LLP, Jeffrey D. Whitney, Jeffrey M. Van der Veer, Denver, Colorado, for Third-Party Plaintiff-Appellee

Woods & Aitken LLP, Kory D. George, Colin P. Baumchen, Denver, Colorado, for Third-Party Defendant-Appellant

¶ 1     Performance bonds, like other forms of surety bonds, are critical to managing the risk inherent in construction projects. If a subcontractor fails to complete its work at a construction site, the surety that underwrote the performance bond assumes responsibility for the subcontractor's obligations. Without performance bonds, a construction project could come to a halt if a single subcontractor walked off the job.

¶ 2     Performance bonds specify the actions that will trigger the surety's obligations. In this appeal, a surety, Guarantee Company of North America USA (GCNA), and a general contractor, Whiting-Turner Contracting Company, dispute whether Whiting-Turner triggered GCNA's obligations under a performance bond after a subcontractor, Klempco Construction (2013) Inc., stopped work at Whiting-Turner's construction project. The parties' disagreement centers on whether Whiting-Turner paid GCNA the "Balance of the Contract Price," a key term in the performance bond, thereby satisfying one of the bond's conditions precedent.

¶ 3     Following a bench trial, the trial court entered judgment in favor of Whiting-Turner and against GCNA. The trial court found

that Whiting-Turner had complied with the condition precedent set forth in section 3.3 of the performance bond and that GCNA had failed to perform its obligations under the bond.

¶ 4     On appeal, GCNA contends that the trial court applied the wrong legal standard in determining whether Whiting-Turner complied with section 3.3 of the performance bond, erred in finding that GCNA had waived its argument regarding Whiting-Turner's compliance with section 3.3, erroneously found that Whiting-Turner satisfied the condition precedent in section 3.3, awarded duplicative damages to Whiting-Turner, and improperly awarded attorney fees to Whiting-Turner.

¶ 5     We affirm.

## I.     Whiting-Turner's Disputes with Klempco and GCNA

### A.     Klempco Signs a Subcontract for Work at Whiting-Turner's Project

¶ 6     Whiting-Turner served as the general contractor for an office building construction project in Denver (the Project).  Whiting-Turner and Klempco entered into an agreement (the Subcontract) for Klempco's construction of an anchor system at the Project's underground parking garage.  The anchor system was necessary to

keep the sides of the excavated site from collapsing during the initial phases of construction. Klempco's work included the installation of sprayed concrete, known as shotcrete, to support the anchoring system. Whiting-Turner and Klempco agreed to a Subcontract price of $1,785,783.00.

B.    GCNA Provides a Performance Bond and a Payment Bond

¶ 7    Whiting-Turner required Klempco to furnish a performance bond and a payment bond. (A surety that underwrites a payment bond is obligated to pay the sub-subcontractors if the subcontractor fails to do so.) Klempco obtained the bonds from GCNA. The bonds, which followed American Institute of Architects form A312, incorporated the Subcontract by reference. *See* 4A Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 12:16, Westlaw (database updated June 2018) (explaining that the A312 surety bond is a standard form in the construction industry).

¶ 8    Section 3 of the performance bond specified the three conditions precedent that Whiting-Turner would need to satisfy to trigger GCNA's obligations as surety:

- provide notice to Klempco and GCNA that Whiting-Turner was considering declaring Klempco in default (section 3.1);

- declare Klempco in default, terminate the Subcontract, and notify GCNA of these actions (section 3.2); and

- "pay the Balance of the Contract Price in accordance with the terms of the [Subcontract] to [GCNA] or to a contractor selected to perform the [Subcontract]" (section 3.3).

¶ 9    The performance bond defined "Balance of the Contract Price" as "[t]he total amount payable by [Whiting-Turner] to [Klempco] under the [Subcontract] *after all proper adjustments have been made, . . .* reduced by all valid and proper payments *made to or on behalf of [Klempco] under the [Subcontract].*"  (Emphases added.)

### C.    Klempco Stops Work at the Project

¶ 10    Klempco fell behind schedule almost immediately and stopped paying its sub-subcontractors.  Klempco subsequently directed Whiting-Turner to assume responsibility for the shotcrete

4

installation and to work directly with two of Klempco's sub-subcontractors.

¶ 11 Whiting-Turner sent Klempco and GCNA a letter declaring Klempco in default under the Subcontract. In the letter, Whiting-Turner stated that Klempco was incapable of completing its work at the Project and "is apparently unable to complete payments to its sub-subcontractors for previously completed work, and by its own admissions is unable to cure such default." Whiting-Turner requested a meeting with Klempco representatives "to discuss the details of Klempco's request that Whiting-Turner take over its work." Whiting-Turner asked GCNA to attend the meeting "to advise Whiting-Turner on how [GCNA] wishes for Whiting-Turner to proceed in connection with the completion of Klempco's work and payment of its vendors."

¶ 12 Representatives of Whiting-Turner, Klempco, and GCNA met on April 30, 2014, to discuss, among other issues, Klempco's request that Whiting-Turner take over the shotcrete work and pay Klempco's sub-subcontractors directly. At the meeting, Whiting-Turner and Klempco amended the Subcontract to reduce Klempco's

5

payment by $553,707.00 — the price of the shotcrete work. Whiting-Turner, Klempco, and GCNA agreed that the shotcrete sub-subcontractor would invoice Whiting-Turner directly.

¶ 13    Two days later, Klempco notified Whiting-Turner that, because Whiting-Turner had declared Klempco in default and was refusing to pay Klempco, Klempco would demobilize from the Project. Whiting-Turner asked GCNA how Whiting-Turner should proceed in light of Klempco's decision to leave the Project. GCNA did not respond.

D.    Whiting-Turner Terminates Klempco's Subcontract

¶ 14    Whiting-Turner terminated the Subcontract after Klempco failed to cure its default. GCNA did not respond to Whiting-Turner's repeated demands that, in light of the termination of the Subcontract, GCNA honor its obligations under the performance bond and advise Whiting-Turner how GCNA intended to proceed.

¶ 15    On June 24, 2014, Whiting-Turner provided GCNA with its calculation of the "Balance of the Contract Price." Whiting-Turner said that it had paid $1,064,919.00 of the "Balance of the Contract Price" to Klempco and its sub-subcontractors, leaving a balance of

$720,819.00. Whiting-Turner deducted certain expenses from this balance:

- $256,897.90 for Whiting-Turner's payments to five unpaid sub-subcontractors who had recorded, or were threatening to record, mechanic's liens against the Project; and

- $553,707.00 for the shotcrete work for which Whiting-Turner had assumed responsibility.

These adjustments resulted in a negative "Balance of the Contract Price."

E.    The Trial Court Enters Judgment Against Klempco and GCNA

¶ 16    Klempco filed suit against Whiting-Turner claiming, among other allegations, that Whiting-Turner had breached the Subcontract by failing to pay sums due to Klempco. Whiting-Turner asserted a counterclaim for breach of the Subcontract. Whiting-Turner also filed third-party claims against GCNA for breach of the performance bond and the payment bond.

¶ 17    GCNA argued that Whiting-Turner had failed to comply with the condition precedent set forth in section 3.3 of the performance

bond and, therefore, never trigged GCNA's obligations under the bond. Specifically, GCNA asserted that Whiting-Turner miscalculated the "Balance of the Contract Price" and, consequently, failed to pay the correct sum to GCNA pursuant to section 3.3.

¶ 18 The case proceeded to a bench trial. In its findings of fact and conclusions of law, the trial court found that Klempco had breached the Subcontract. In addition, the trial court found that Whiting-Turner had complied with the condition precedent set forth in section 3.3 of the performance bond. The trial court further found that GCNA had breached the performance bond and the payment bond. The trial court held that GCNA was jointly and severally liable with Klempco for Whiting-Turner's damages.

¶ 19 Alternatively, the trial court found that GCNA had waived its arguments regarding Whiting-Turner's compliance with section 3.3 by failing to respond to Whiting-Turner's repeated requests for guidance after Klempco stopped performing under the Subcontract.

¶ 20 The trial court found that, as a consequence of GCNA's breach of the performance bond, Whiting-Turner had incurred $798,248.93

8

in damages, including $124,146.95 in prejudgment interest. The trial court calculated Whiting-Turner's damages by first determining how much Whiting-Turner had paid the sub-subcontractors to complete the work specified in the Subcontract. The trial court subtracted from this number the sum that Whiting-Turner had agreed to pay Klempco in the original Subcontract.

¶ 21    The trial court later revised its damage calculations to reflect two adjustments to the $798,248.93 figure: (1) a reduction of $3,322.90 for unrecoverable overhead and (2) additional prejudgment interest in the amount of $37,334.21. The trial court awarded Whiting-Turner $832,260.24 in damages against Klempco and GCNA, jointly and severally.

¶ 22    Whiting-Turner moved for an award of attorney fees and costs against Klempco and GCNA under the Subcontract; Colorado's mechanic's lien statute, section 38-22-128, C.R.S. 2018; and the performance and payment bonds. GCNA opposed Whiting-Turner's request for attorney fees and argued, in the alternative, that GCNA was liable only for those fees attributable to Whiting-Turner's claims against GCNA. GCNA contended that it was not liable for

Whiting-Turner's fees attributable to its defenses to Klempco's claims, Whiting-Turner's claims against Klempco, or Whiting-Turner's claim against GCNA for breach of the payment bond.

¶ 23    The trial court found that it could not apportion Whiting-Turner's fees among the various claims and defenses litigated in the case, however, because "all of the claims of both parties ar[o]se out of the same operative facts."  The trial court held Klempco and GCNA jointly and severally liable to Whiting-Turner for $504,785.27 in attorney fees and costs and $18,990.14 in interest.

¶ 24    GCNA appeals the trial court's post-trial rulings on damages and attorney fees.  (The trial court subsequently increased the amount of attorney fees awarded to Whiting-Turner.  GCNA did not file an amended notice of appeal to obtain review of this decision, however.  We therefore address the two appealed orders only.  *See Baldwin v. Bright Mortg. Co.*, 757 P.2d 1072, 1074 (Colo. 1988) (holding that attorney fees award is separately appealable from judgment on the merits).)

## II. The Record Does Not Indicate that the Trial Court Applied an Incorrect Legal Standard in Analyzing Whether Whiting-Turner Complied with Section 3.3 of the Performance Bond

¶ 25    GCNA contends that the trial court erred in finding that Whiting-Turner was required only to substantially comply, rather than strictly comply, with the condition precedent set forth in section 3.3 of the performance bond. GCNA asks us to hold that contractors must strictly comply with the conditions precedent in a performance bond and, therefore, reverse the trial court's finding that Whiting-Turner complied with section 3.3.

¶ 26    The record does not support GCNA's contention, however. Because the trial court did not find that Whiting-Turner only substantially complied with section 3.3, we need not address in this context the proper legal standard for determining whether a contractor satisfied a condition precedent in a performance bond. *See Zingone v. Zingone*, 136 Colo. 39, 43, 314 P.2d 304, 306 (1957) (holding that appellate court may not consider a party's version of what transpired in the lower court that does not appear in the record).

¶ 27　GCNA's argument regarding the substantial compliance standard rests on a single sentence in the trial court's discussion of Whiting-Turner's compliance with the *notice provision* in the *payment bond*.  The trial court said that "only substantial performance with bond notice requirements is required . . . ."

¶ 28　This is a correct statement regarding the standard for compliance with the notice provision in a surety bond.  *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 334 (Colo. App. 1996), *aff'd*, 940 P.2d 348 (Colo. 1997).  But this case does not concern Whiting-Turner's compliance with a notice requirement.

¶ 29　GCNA does not point to anything in the record demonstrating that the trial court found that Whiting-Turner was required only to substantially comply with the condition precedent in section 3.3 of the performance bond.  Moreover, GCNA does not contend that the trial court found that Whiting-Turner only substantially complied, and did not strictly comply, with section 3.3.

¶ 30　We therefore decline to address this argument.

### III. We Need Not Address GCNA's Waiver Argument

¶ 31    GCNA contends that the trial court erred in finding that GCNA waived its argument that Whiting-Turner failed to satisfy the condition precedent set forth in section 3.3. The trial court inserted a single sentence regarding waiver in the midst of its extensive discussion of Whiting-Turner's compliance with section 3.3, however.

¶ 32    The trial court's ruling in favor of Whiting-Turner rested not only on waiver but also on the trial court's thorough analysis of the merits of Whiting-Turner's claims. The trial court's reference to waiver therefore reflected, at most, an alternative basis for its findings of fact and conclusions of law.

¶ 33    We need not address whether GCNA waived its arguments concerning Whiting-Turner's compliance with section 3.3 because, as we explain in Part IV below, we agree with the trial court that Whiting-Turner properly triggered GCNA's obligations under the performance bond. *See Archuleta v. Gomez*, 140 P.3d 281, 285 (Colo. App. 2006) (declining to address the trial court's alternative ruling when the record supported the trial court's findings and

verdict on the claim). We therefore now turn to the merits of GCNA's argument regarding section 3.3.

IV. The Trial Court Did Not Err in Finding that Whiting-Turner Satisfied the Condition Precedent Set Forth in Section 3.3 of the Performance Bond

¶ 34 GCNA contends that the trial court erred in finding that Whiting-Turner satisfied the condition precedent in section 3.3 of the performance bond. GCNA asserts that Whiting-Turner did not comply with section 3.3 because it miscalculated the "Balance of the Contract Price" and did not pay the correct amount to GCNA. GCNA specifically argues that Whiting-Turner improperly reduced the "Balance of the Contract Price" by

- the amount of Whiting-Turner's anticipated payments to five unpaid sub-subcontractors that had recorded, or were threatening to record, mechanic's liens against the Project;

- the $553,707.00 reduction in the "Balance of the Contract Price" to which Whiting-Turner and Klempco agreed at the April 30 meeting (which GCNA also attended); and

14

- a back charge of $30,702.00.

Lastly, GCNA asserts that we should adopt the reasoning of an unpublished New York state trial court decision that, according to GCNA, supports its position that Whiting-Turner failed to comply with section 3.3.

¶ 35    The record supports the trial court's finding that Whiting-Turner satisfied the condition precedent in section 3.3 of the performance bond.

### A.    Standard of Review

¶ 36    We review de novo questions of law, such as the interpretation of a provision in a surety bond.  *See Brighton Sch. Dist. 27J*, 923 P.2d at 333.  We review a court's findings of fact for clear error.  *Id.* A factual finding is clearly erroneous if nothing in the record supports it.  *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1117 (Colo. App. 2010).

B. The Trial Court Did Not Err in Finding that Whiting-Turner Correctly Calculated the "Balance of the Contract Price"

1. Whiting-Turner Properly Deducted from the "Balance of the Contract Price" Its Payments to the Five Unpaid Sub-Subcontractors

¶ 37 GCNA contends that the trial court erred in finding that Whiting-Turner properly reduced the "Balance of the Contract Price" by the $256,897.90 that Whiting-Turner paid to the five unpaid sub-subcontractors. We disagree.

¶ 38 The Subcontract authorized Whiting-Turner to pay Klempco's unpaid sub-subcontractors and to subtract those payments from the "Balance of the Contract Price." Under the Subcontract, Klempco was required to ". . . take any and all necessary actions to keep the Project free and clear of all claims for liens . . . ." If Klempco failed to take the "necessary actions," Whiting-Turner could "take all actions which it deems reasonable or necessary to protect the Project from liens and claims and the costs of any such actions . . . shall be deducted from amounts payable by [Whiting-Turner] to [Klempco]" under the Subcontract.

¶ 39 Despite this language, GCNA asserts that the "Balance of the Contract Price" became fixed in place as of the moment Whiting-

16

Turner terminated the Subcontract. Therefore, according to GCNA, Whiting-Turner's post-termination payments to Klempco's unpaid sub-subcontractors, who were clamoring for payment and threatening to record liens against the Project, could not reduce the "Balance of the Contract Price."

¶ 40    No language in either section 3.3 or the Subcontract barred Whiting-Turner from reducing the "Balance of the Contract Price" by the amount of its post-termination payments to unpaid sub-subcontractors, however. The five sub-subcontractors had already completed their work on the Project and had either recorded or were threatening to record liens against the Project. Thus, Whiting-Turner paid Klempco's sub-subcontractors "to protect the Project from liens and claims . . . ."

¶ 41    GCNA cites to several cases to support its assertion that none of Whiting-Turner's payments postdating the termination of the Subcontract properly reduced the "Balance of the Contract Price." These cases do not assist GCNA, however. They hold that, when a general contractor hires a *replacement subcontractor* without the surety's consent, the general contractor has failed to satisfy the

17

conditions precedent in the performance bond.  Under those circumstances, the general contractor cannot reduce the "Balance of the Contract Price" by the amount of its payments to replacement subcontractors.  *See LaSalle Grp., Inc. v. JST Props., L.L.C.*, No. 10-14380, 2011 WL 3268099, at *6 (E.D. Mich. July 29, 2011) ("[T]he hiring of a *replacement contractor* fails to satisfy the requirement of paragraph 3.3 [of a form A312 bond].") (emphasis added); *Enter. Capital, Inc. v. San-Gra Corp.*, 284 F. Supp. 2d 166, 177 (D. Mass. 2003) (explaining that the "notice requirement in the Construction Contract exists precisely to provide the surety an opportunity to protect itself against loss by participating in the selection of the *successor contractor*") (emphasis added); *Sch. Bd. v. TIG Premier Ins. Co.*, 110 F. Supp. 2d 1351, 1354 (N.D. Fla. 2000) (obligee "could not contract with another party . . . *prior to giving [the surety] notice*") (emphasis added); *Solai & Cameron, Inc. v. Plainfield Cmty. Consol. Sch. Dist. No. 202*, 871 N.E.2d 944, 954 (Ill. App. Ct. 2007) ("*[R]eplacement* is a form of mitigation available only to [the surety] under the provisions of [the performance bond].") (emphasis added).

18

¶ 42   None of the sub-subcontractors Whiting-Turner paid was a replacement contractor. Klempco had selected all five of the sub-contractors. Accordingly, we conclude that the $256,897.90 Whiting-Turner paid to the five unpaid sub-subcontractors after the termination of the Subcontract properly reduced the "Balance of the Contract Price." (GCNA also contends that the trial court improperly reduced the "Balance of the Contract Price" by $99,901.65 that Whiting-Turner paid to sub-subcontractors. The record reflects, however, that these payments were included within the $256,897.90 Whiting-Turner paid to the five sub-subcontractors.)

2.   Whiting-Turner Properly Subtracted from the "Balance of the Contract Price" the $553,707.00 Reduction in Its Payment to Klempco

¶ 43   GCNA also contends that the trial court improperly reduced the "Balance of the Contract Price" by the $553,707.00 reduction in the price payable to Klempco under the Subcontract for the shotcrete work. We conclude that the trial court did not err by reducing the "Balance of the Contract Price" by this amount.

¶ 44    The trial court found that, at their April 30 meeting with GCNA, Whiting-Turner and Klempco agreed to reduce the amount payable to Klempco by the $553,707.00 specified in the Subcontract for the shotcrete work.  Whiting-Turner advised GCNA and Klempco in letters dated May 2, 2014, and May 9, 2014, that it intended to incur the expense of completing the shotcrete work.  When Whiting-Turner asked GCNA in a May 2, 2014, email if it was acceptable for Whiting-Turner to pay for the shotcrete work directly, GCNA responded "Yes."  GCNA therefore at least tacitly consented to reduction of the "Balance of the Contract Price" by $553,707.00.

¶ 45    Whiting-Turner and Klempco had the right to amend their agreement memorialized in the Subcontract, and did so when they reduced Klempco's payment by $553,707.00.  Accordingly, we conclude that the trial court did not err in finding that Whiting-Turner properly reduced the "Balance of the Contract Price" by the $553,707.00 reduction in the Subcontract price.

3.    Whiting-Turner Correctly Subtracted the Back Charge from the "Balance of the Contract Price"

¶ 46    GCNA lastly contends that the trial court improperly reduced the "Balance of the Contract Price" by a back charge of $30,702.00

20

because the trial court disallowed the amount of the back charge as an item of damages. (GCNA fails to acknowledge that the trial court adjusted the amount of the back charge to $5,915.00.) We disagree.

¶ 47　As GCNA notes, the trial court reduced Whiting-Turner's damages by the amount of the back charge. GCNA provides no explanation, beyond a one-sentence, conclusory statement, to support the proposition that, because Whiting-Turner could not recover the amount of the back charge as a component of its damages, the payment could not also reduce the "Balance of the Contract Price." We decline to address an undeveloped argument without legal support. *See Holley v. Huang*, 284 P.3d 81, 87 (Colo. App. 2011) (declining to address "bald assertions of error" unsupported by legal authority).

　　4.　The New York Trial Court Decision on Which GCNA Relies Does Not Support GCNA's Argument that Whiting-Turner Failed to Satisfy the Condition Precedent in Section 3.3

¶ 48　We are not persuaded that the New York unpublished trial court decision cited by GCNA supports its argument that Whiting-Turner failed to comply with the condition precedent in section 3.3.

21

¶ 49 In *East 49th Street Development II, LLC v. Prestige Air & Design, LLC*, 938 N.Y.S.2d 226, 2011 WL 4599708 (N.Y. Sup. Ct. Oct. 6, 2011) (unpublished table decision), the contractor failed to tender the balance of the contract price to the surety, even though the balance of the contract price was positive, in violation of section 3.3 of the form A312 performance bond. *Id.* at *9. The *East 49th Street* court explained that an offer to pay the contract balance, even if the balance was negative, was sufficient to satisfy section 3.3 of the performance bond. *Id.* at *10.

¶ 50 Unlike the contractors in *East 49th Street*, Whiting-Turner acknowledged in its June 24, 2014, letter that it was required to pay GCNA the remainder of the "Balance of the Contract Price." Based on Whiting-Turner's tender of the "Balance of the Contract Price" to GCNA — albeit a negative balance — the trial court correctly found that Whiting-Turner had satisfied section 3.3 of the performance bond.

¶ 51 The law supports this conclusion. *See U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 59 (2d Cir. 2004) ("[T]he relevant inquiry is whether the Obligees actually agreed to pay the

22

Balance of the Contract Price — not, as the Sureties urge, whether the Obligees agreed with the Sureties' assessment of what the respective Balances were at the time of the declarations of default."). Accordingly, *East 49th Street* does not support GCNA's argument that Whiting-Turner failed to comply with section 3.3.

V. The Trial Court Did Not Award Duplicative Damages to Whiting-Turner

¶ 52 GCNA contends that "Whiting-Turner essentially 'triple-dipp[ed]' in that it sought the very same dollars in three ways" by (1) reducing the "Balance of the Contract Price" payable to GCNA; (2) seeking payment of the same amount under the performance bond; and (3) attempting to recover this sum under the payment bond.

¶ 53 The record does not reflect that the trial court awarded Whiting-Turner any duplicative damages, however. The trial court reduced the amount of the judgment to permit Whiting-Turner to recover only under the performance bond. In doing so, the trial court correctly subtracted from the judgment the sum that Whiting-Turner would have been required to pay Klempco had Klempco not breached the Subcontract.

¶ 54     Therefore, the trial court's judgment did not reflect "triple dipping."  GCNA appears to acknowledge this fact in both its opening and reply brief.  Accordingly, we disagree with GCNA that the trial court awarded duplicative damages to Whiting-Turner.

## VI.    The Trial Court Properly Awarded Whiting-Turner Its Attorney Fees

¶ 55     GCNA lastly contends that the trial court erroneously awarded attorney fees to Whiting-Turner under the performance bond.  GCNA asserts that, because Whiting-Turner did not satisfy the condition precedent in section 3.3, Whiting-Turner could not recover attorney fees.  Alternatively, GCNA argues that the trial court improperly failed to segregate the fees awardable to Whiting-Turner for its claim against GCNA from the fees attributable to Whiting-Turner's other claims and defenses.  We disagree with both contentions.

### A.    Standard of Review

¶ 56     When awarding attorney fees and costs under a contractual fee-shifting provision, "[t]he determination of which party prevailed is committed to the discretion of the trial court and is subject to an abuse of discretion standard of review on appeal."  *Dennis I. Spencer*

*Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 328 n.6 (Colo. 1994) (citing *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990)). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it is based on an erroneous view of the law. *Zeke Coffee, Inc. v. Pappas-Alstad P'ship*, 2015 COA 104, ¶ 12, 370 P.3d 261, 265. We will not disturb such a decision if it is supported by the record. *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 151 (Colo. App. 2003).

## B. The Law Governing Attorney Fees

¶ 57    "[I]f the parties agree, in a contract clause known as a fee-shifting provision, . . . the prevailing party will be entitled to recover its attorney fees and costs." *S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 10, 343 P.3d 1044, 1047.

¶ 58    A party can recover all of its attorney fees for a lawsuit containing "multiple claims 'involv[ing] a common core of facts' or 'based on related legal theories,' [when] counsel's efforts on an individual claim [cannot] be distinguished from work on the whole

of the litigation . . . ." *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1073 (Colo. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). However, when the party "presented 'distinctly different claims for relief that [were] based on different facts and legal theories,'" the party may recover only those legal fees attributable to the claims on which the party prevailed. *Id.* (quoting *Hensley*, 461 U.S. at 435).

### C. Discussion

#### 1. The Trial Court Properly Awarded Attorney Fees to Whiting-Turner Under the Performance Bond

¶ 59 Because Whiting-Turner complied with section 3.3, we agree with the trial court that Whiting-Turner had the right to recover attorney fees under the performance bond. The performance bond bound Klempco and GCNA, "jointly and severally, . . . to [Whiting-Turner] for the performance of the [Subcontract], which is incorporated herein by reference." The Subcontract required Klempco to pay "[t]he amount of completion costs, as well as any other costs, damages, or expenses, including [Whiting-Turner's] legal fees and expense[s], incurred as a result of [Klempco's] default . . . ." The Subcontract also required Klempco to indemnify

26

Whiting-Turner "against any and all claims, suits, liens, judgments, damages, losses and expenses, including, but not limited to, attorney's fees, arising in whole or in part and in any manner for the acts or omissions of [Klempco] . . . in the performance of the [Subcontract] . . . ."

¶ 60 The language of the Subcontract demonstrates that Klempco and Whiting-Turner intended that Klempco would pay any legal fees that Whiting-Turner incurred as a consequence of Klempco's default. *See Powder Horn Constructors, Inc. v. City of Florence*, 754 P.2d 356, 365 (Colo. 1988) (language of the contract determines intent (citing *Gen. Ins. Co. of Am. v. City of Colorado Springs*, 638 P.2d 752, 757 (Colo. 1981))). Because the performance bond provided that GCNA was jointly and severally liable with Klempco for all sums that Klempco owed Whiting-Turner under the Subcontract, GCNA was liable to Whiting-Turner for the attorney fees that Klempco owed to Whiting-Turner. We therefore conclude that the trial court did not abuse its discretion in awarding attorney fees to Whiting-Turner under the performance bond.

## 2. The Trial Court Did Not Err in Not Segregating the Fees Awarded to Whiting-Turner

¶ 61    GCNA challenges the lack of segregation between Whiting-Turner's fees attributable to Whiting-Turner's claims against GCNA arising under the performance bond and Whiting-Turner's fees relating to the other claims and defenses in the case.  The trial court found, however, "that it is improper[ ] to segregate out Whiting-Turner defense costs against Klempco versus the cost and fees that [Whiting-Turner] incurred in bringing its claims against Klempco for completion of the [P]roject."  The trial court explained that "*all of the claims of both parties* arise out of the same operative facts . . . ."  (Emphasis added.)

¶ 62    To prosecute its claim for breach of the performance bond, Whiting-Turner had to prove its compliance with each of the three conditions precedent set forth in the performance bond: (1) notification to Klempco and GCNA that Whiting-Turner was considering declaring Klempco in default; (2) notification to GCNA that Whiting-Turner had declared a default and terminated the Subcontract; and (3) payment of the "Balance of the Contract Price" to GCNA or a designated replacement subcontractor.  Whiting-

Turner therefore could not prove its claim under the performance bond unless it established, among other facts, that it had properly declared Klempco in default and terminated the Subcontract.

¶ 63    All the claims in the case, including Whiting-Turner's claim under the performance bond, therefore "involv[ed] a common core of facts." *Rocky Mountain Festivals, Inc.*, 242 P.3d at 1073 (quoting *Hensley*, 461 U.S. at 435).  We discern no error in the trial court's finding that Whiting-Turner's attorney fees could not be apportioned amongst Whiting-Turner's claims against GCNA, claims against Klempco, and defenses to Klempco's claims, as all such claims and defenses were intertwined.  The trial court thus correctly held that, under the performance bond, GCNA was liable to Whiting-Turner for all of Whiting-Turner's attorney fees incurred in the litigation.

¶ 64    For these reasons, we conclude that the trial court did not abuse its discretion in awarding Whiting-Turner its attorney fees incurred in this litigation or in calculating the amount of such fees.

## VII.   Conclusion

¶ 65    The judgment is affirmed.

JUDGE DAILEY and JUDGE FURMAN concur.