**Joan L. HOLLEY, Plaintiff–Appellant,**

**v.**

**Linda C. HUANG, M.D., Defendant–Appellee.**

No. 10CA1187.

Colorado Court of Appeals,
Div. IV.

May 12, 2011.

Certiorari Denied Sept. 12, 2011.

Andrew T. Brake, P.C., Andrew T. Brake, Englewood, Colorado, for Plaintiff–Appellant.

Pryor Johnson Carney Karr Nixon, P.C., Elizabeth C. Moran, David D. Karr, Scott S. Nixon, Greenwood Village, Colorado, for Defendant–Appellee.

Opinion by Judge RUSSEL.

Plaintiff, Joan L. Holley, appeals from the trial court's judgment in favor of defendant, Dr. Linda C. Huang. We affirm.

## I. Introduction

Huang performed breast augmentation surgery on Holley. Holley later sued for damages. She did not claim that Huang performed the surgery poorly. Instead, she claimed that Huang failed to obtain an informed consent for the particular procedure—a circumareolar mastopexy—that was used on Holley's right breast.

To prevail on this claim, Holley was required to prove the following:

1. Huang negligently failed to obtain Holley's informed consent before making an incision around the areola to place an implant and to lift Holley's right breast;

2. A reasonable person in the same or similar circumstances as Holley would not have consented to the procedure if given the necessary information; and

3. Huang's negligent failure caused Holley's injuries or damages.[1]

After hearing evidence, a jury returned a verdict in Huang's favor. The jury found that Huang did obtain Holley's informed consent before performing the surgery.

Holley now requests a new trial. In support of this request, she presents more than forty arguments. We discuss three of these in detail; we dispose of several others summarily; and we disregard the rest.

## II. Arguments Discussed in Detail

Here we discuss two evidentiary rulings and a jury instruction. We conclude that reversal is unwarranted.

### A. Expert Opinion

■ Holley proffered expert opinion to prove that Huang was negligent in failing to document the informed consent. We conclude that the trial court correctly disallowed that testimony.

■ Colorado law places certain duties on medical doctors. As pertinent here, before performing any medical procedure, a doctor must inform the patient of the procedure's substantial risks and obtain the patient's consent. *See Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.*, 95 P.3d 571, 587 (Colo.2004). But the law does not restrict the manner in which these duties may be discharged. A doctor may employ any means of communication—such as conversation, writings, video and audio recordings, or some combination of these—that will yield a properly informed consent.

■ For purposes of analysis, we accept that doctors routinely memorialize their advisements about the risks of surgical procedures. We accept that doctors routinely obtain patients' consent in writing. And we recognize that doctors have good reasons to do this. (One reason is that careful documentation may forestall the type of dispute that led to this appeal.) But contrary to Holley's view, documentation is not required. *See Maercklein v. Smith*, 129 Colo. 72, 80, 266 P.2d 1095, 1099 (1954) (although the practice of obtaining a signed authorization is "laudable in every respect," it is not required); *see*

---

1. This formulation, embodied in Instructions 6 and 12, tracks the three-element claim described in *Williams v. Boyle*, 72 P.3d 392, 398 (Colo.App. 2003). It differs in structure (but not in substantive content) from the four-element test set forth in CJI–Civ. 15:10.

*also Cooper v. United States,* 903 F.Supp. 953, 957 (D.S.C.1995) (the informed consent law of South Carolina "focuses on the content of the information conveyed to the patient and not on the form in which it is provided"); *Yahn v. Folse,* 639 So.2d 261, 265 (La.Ct.App. 1993) (consent need not be written); *Patterson v. Van Wiel,* 91 N.M. 100, 570 P.2d 931, 934 (Ct.App.1977) (same).

Because documentation is not required, a failure to document does not constitute a failure to meet the standard of care required of doctors in the pertinent professional community. Therefore, the court properly disallowed the proffered expert opinion.

### B. Holley's Testimony

■■■ Holley wanted to testify that she would never have consented to a circumareolar mastopexy had she been properly informed of its risks. She argued that this testimony would be relevant to establish the second element of her claim. (In other words, it would tend to show that a reasonable person in Holley's circumstances would not have consented if given the requisite information.)

In a pretrial ruling, the trial court excluded Holley's testimony. The court stated that the "proposed testimony is not relevant ... and any minimal probative value attendant to such testimony is outweighed by the risk of prejudice to the defense." We conclude that the court's ruling was erroneous, but harmless.

### 1. The ruling was erroneous.

■■ The court misapprehended the logical relevance of Holley's testimony. Although the second element of an informed consent claim incorporates an objective standard, *Miller v. Van Newkirk,* 628 P.2d 143, 147 (Colo.App.1980), Holley's subjective testimony was probative of that standard. In other words, what Holley would have done is some evidence of what a reasonable person in her position would have done. *See Canterbury v. Spence,* 464 F.2d 772, 791 (D.C.Cir.1972) (patient's testimony is relevant to show what a reasonable person in the patient's position would have decided if properly informed); *Fain v. Smith,* 479 So.2d 1150, 1155 (Ala.

1985) (patient's hindsight testimony, although not conclusive of the objective test, is "material and relevant and entitled to be considered by the jury"); *Sard v. Hardy,* 281 Md. 432, 379 A.2d 1014, 1025 (1977) (patient's hindsight testimony about what he would have done is relevant, but not determinative, of the objective test); *Nickell v. Gonzalez,* 17 Ohio St.3d 136, 477 N.E.2d 1145, 1149 (1985) (hindsight testimony is relevant but not determinative); *Fletcher v. Medical University of South Carolina,* 390 S.C. 458, 702 S.E.2d 372, 377–78 (App.2010) (patient's testimony is not determinative, but it is some evidence that jurors may consider in light of their own experiences).

Having concluded that Holley's testimony was logically relevant, we must now decide whether the court correctly excluded the evidence under CRE 403. Because the rules of evidence strongly favor the admission of evidence, we must assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected. *People v. District Court,* 869 P.2d 1281, 1285–86 (Colo.1994); *People v. District Court,* 785 P.2d 141, 147 (Colo.1990) (same). We conclude that the court abused its discretion because the proffered testimony presented no particular risk of unfair prejudice. *See District Court,* 785 P.2d at 147 (unfair prejudice refers to the tendency to "suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror").

### 2. The error was harmless.

To win a new trial, Holley must establish that the court's error affected her substantial rights. *See* CRE 103; C.R.C.P. 61; *Bly v. Story,* 241 P.3d 529, 535 (Colo.2010). She must show that the decision to exclude her testimony "influenced the outcome of the case or impaired the basic fairness of the trial itself." *Bly,* 241 P.3d at 535 (quoting *Banek v. Thomas,* 733 P.2d 1171, 1178 (Colo. 1986)).

We conclude that Holley has failed to make the necessary showing.

The jury found that Holley had been informed of the substantial risks associated with a circumareolar mastopexy. This finding means that Holley's claim failed on the first element. Therefore, the court's error was harmless unless it substantially affected the jury's determination of that first element. (If an informed consent claim fails on its first element, any inquiry into the remaining elements is purely hypothetical.)

After reviewing the record, we are not persuaded that the court's error affected the jury's determination of the first element. Holley testified—directly and repeatedly—that she was not informed of the substantial risks associated with a circumareolar mastopexy. And her lawyer argued that Holley would not have consented if she had been informed. But the jury rejected Holley's position after hearing that (1) Huang likely advised Holley as a matter of habit and practice, (2) Holley had consulted with other doctors who advised her about the risks of a mastopexy, (3) Holley signed a consent form that contained the notation "incision on right side will be around the nipple," and (4) Holley sought further treatment from Huang, including treatment unrelated to the mastopexy, yet did not mention informed consent for several months.

Under the circumstances, we think that the proffered statement would not have made any difference.

### C. Habit Instruction

▇▇▇▇ The court gave the following instruction about habit testimony: "In case of doubt as to what a person has done, it may be considered more probable that he has done what he has been in the habit of doing, than that he acted otherwise."

Holley contends that this instruction constituted reversible error. We disapprove of the instruction but decline to reverse.

### 1. Holley's Argument

At trial, Holley objected that the instruction effectively required the jury to credit habit testimony above other types of evidence.[2] The trial court overruled that objection, noting: "[I]t doesn't direct the jurors that they shall consider [the habit testimony]. It says it may be considered."

On appeal, Holley appears to reiterate the concerns that she raised at trial. She suggests that the instruction created a presumption and asserts that habit testimony should be treated like all other evidence. She also states (without elaboration) that the instruction "wrongfully emphasized" the habit testimony.

### 2. Discussion

We reject the narrow argument that Holley presented at trial. As Huang correctly notes, the instruction contains an accurate statement about the relevance of habit testimony. *See* CRE 406; *Bloskas v. Murray*, 646 P.2d 907, 911 (Colo.1982). And, as the trial court noted, the instruction does not require the jury to credit habit testimony over other forms of evidence.

But we agree with Holley that the instruction should not have been given. Although the instruction contains a correct statement of law, that statement was never intended to guide jury deliberations. *Cf. People v. Mandez*, 997 P.2d 1254, 1270–71 (Colo.App.1999) (instruction on "fingerprint evidence rule" was properly denied because the rule was designed to guide judicial review, not jury deliberations). By giving the instruction, the court erroneously emphasized one type of evidence and highlighted one defense-favorable inference. *See Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo.2009) ("[W]e disfavor instructions emphasizing specific evidence."); *see also Etheridge v. Harold Case & Co.*, 960 So.2d 474, 484 (Miss.Ct.App.2006) (instruction on habit testimony was correctly refused because that instruction would have been an improper comment on the evidence); *but see Hajian v. Holy Family Hospital*, 273 Ill. App.3d 932, 210 Ill.Dec. 156, 652 N.E.2d 1132, 1140 (1995) (because habit testimony

**2.** Holley's lawyer said: "[I]t certainly is not the law in Colorado that the jury is told that they should consider [habit] testimony as more probable than not what happened. If that were the case, any physician could stand up and say ... 'I remember nothing. This is my custom, habit, practice, and routine,' and the jury essentially has to consider that more probable."

was properly admitted, the trial court had discretionary authority to give the pattern habit instruction).

Nevertheless, we decline to reverse:

1. We cannot tell whether Holley's appellate argument implicitly comprises the observations that we have made. But we are sure that her trial objection did not. We therefore regard this issue as an unpreserved assertion of error. *See* C.R.C.P. 51; *Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579, 586 (Colo. 1984). Because this is a civil case, we will reverse only if convinced that the instruction constituted a manifest injustice that almost surely affected the outcome. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195 (Colo. App.2009); *Robinson v. City & County of Denver*, 30 P.3d 677, 685 (Colo.App. 2000).

2. We do not perceive the kind of error or prejudice that would warrant reversal. The instruction did not require the jurors to give special weight to habit testimony, nor did it require them to draw inferences in Huang's favor. A separate instruction properly guided the jury's evaluation of the weight and credibility of evidence.[3] During closing argument, Holley's attorney noted that habit testimony was merely a type of evidence that could be considered "just like ... anything else that's said in this courtroom." And he argued that Huang's habit testimony was convenient, unreliable, and uncorroborated.

## III. Arguments Discussed Briefly

Holley makes several other arguments that warrant only brief discussion. We address those here.

### A. Standard of Care

At Huang's request, the court disallowed questions about a physician's "standard of care" and instead required the parties to ask whether physicians' conduct was "reasonable, acceptable, and appropriate." We do not think that this ruling undermined the fairness of the trial. Holley's attorney was able to reframe his questions as the court directed. And during closing argument, he clarified that the "standard of care" referenced in the instructions "means what a reasonable and careful physician would do."

Contrary to Holley's view, the court did not err by instructing the jury to base its determination of negligence, not on a standard of its own making, but on the evidence and instructions presented. (And we dismiss the suggestion that, by giving the instruction, the court showed bias in Huang's favor.)

### B. Juror's Question

At trial, a juror forwarded a question to be asked of Holley's expert. *See* C.R.C.P. 47(u). The question was: "In your experience is it common for patients to cry in the post op exam room?" The court declined to ask that question.

We conclude that the court's decision was well within the scope of its discretion. The question, as framed, was irrelevant. (There was no evidence that Holley cried immediately after the operation.) The court had no duty to reframe the question, and Holley has failed to explain how she would have benefitted from such a question.

### C. Express and Implied Consent

The court gave this instruction on consent:

Express consent may be given orally or in writing. Implied consent means words or conduct of the plaintiff that led the defendant reasonably to believe that the plaintiff was consenting to the operation.

3. Instruction 4 stated, in pertinent part:
You are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You should take into consideration their means of knowledge, strength of memory and opportunities for observation; the reasonableness or unreasonableness of their testimony; the consistency or lack of consistency in their testimony; their motives; whether their testimony has been contradicted or supported by other evidence; their bias, prejudice or interest, if any; their manner or demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affect the credibility of the witnesses.

We see no error. The instruction accurately stated the governing law. *See Maercklein*, 129 Colo. at 80, 266 P.2d at 1099. And we think it unlikely that the jury was misled by the statement about implied consent.

### D. Carrying Instruction and Special Verdict Forms

■ Holley contends that the court erred in failing to give the pattern carrying instruction and verdict forms set forth in CJI–Civ. 15:14 and 15:15. We see no abuse of discretion. The court modified the instruction and forms to match the pertinent elemental instruction, and we see nothing inaccurate or confusing in the materials given to the jury.

### IV. Arguments Not Addressed

■ Holley's remaining arguments are not properly presented for our review. Many of these are simply bald assertions of error that lack any meaningful explanation. This sort of "argument" violates C.A.R. 28(a)(4) and will not be addressed. *See People v. Simpson*, 93 P.3d 551, 555 (Colo.App. 2003) (declining to address "a bald legal proposition" that is not developed with supporting argument); *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 554 n. 9 (D.C.2001) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quoting *United States v. Zannino*, 895 F.2d 1, 16 (1st Cir.1990)).[4]

■ We similarly decline to address arguments that appear for the first time in the reply brief. *See Meadow Homes Development Corp. v. Bowens*, 211 P.3d 743, 748 (Colo.App.2009).

The judgment is affirmed.

Judge DAILEY and Judge MILLER concur.

---

4. Counsel's failure to present meaningful argument stems in part from his decision to assert so many claims of error. *See United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir.1993) ("Counsel bears responsibility for narrowing the issues presented on appeal from the entire universe of possible objections to the proceedings below to the small set of arguments that offer a legitimate chance for success.").