23CA1034 Davenport v Parrott 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1034 Larimer County District Court No. 22CV30471 Honorable Joseph D. Findley, Judge Benjamin E. Davenport and Kirk A. Smith, Plaintiffs-Appellants, v. Phillip A. Parrott and Campbell Killin Brittan & Ray, LLC, a Colorado limited liability company, Defendants-Appellees. JUDGMENT AFFIRMED Division VI Opinion by JUDGE BERNARD* Lipinsky and Schutz, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 Daniel W. Alexander, PLLC, Daniel W. Alexander, Fort Collins, Colorado, for Plaintiffs-Appellants Campbell, Wagner & Frazier, LLC, Colin C. Campbell, Greenwood Village, Colorado; Bruno, Colin & Lowe P.C., Heidi Hugdahl, Denver, Colorado; Campbell Killin Brittan & Ray, LLC, Bruce E. Rohde, Denver, Colorado for Defendants-Appellees *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Plaintiffs, Benjamin E. Davenport and Kirk A. Smith, to whom we will refer collectively as “the officers,” appeal the trial court’s decision to grant a summary judgment motion filed by defendants, Phillip A. Parrott, to whom we will refer as “the lawyer,” and Campbell, Killin, Brittan & Ray, LLC, to which we will refer as “the law firm.” We affirm. I. Background ¶ 2 In 2012, Mr. Davenport was the president and Mr. Smith was the chief financial officer of a limited liability company called Blue Point Pellets, LLC. Blue Point Pellets was a subsidiary of a limited liability company called Blue Ocean Holdings, LLC. Three years later, the officers resigned their positions. ¶ 3 In 2016, Blue Ocean hired an investigator to look into “the financial affairs and business operations” of Blue Point Pellets. ¶ 4 About a year into the investigation, the investigator contacted the lawyer, who was working at the law firm, and asked him for input into the investigator’s proposed final report. The investigator sought his advice because he had once served as a chief deputy district attorney in charge of the Denver District Attorney’s Economic Crime Unit. The investigator wanted him to read the 
2 proposed final report, to offer recommendations about which criminal law statutes might apply to the officers’ conduct, and to participate in a conference call with the leadership of Blue Ocean. ¶ 5 After the conference call, Blue Ocean contacted the District Attorney’s Office in the Eighth Judicial District to report the officers’ alleged criminal conduct. The investigator and the lawyer then attended an in-person meeting with the elected district attorney to discuss the report. The lawyer offered to serve as a special deputy district attorney in any criminal case that might be filed against the officers. ¶ 6 According to the complaint, the lawyer was appointed to serve as a special deputy district attorney in November 2017. But, at the time of his appointment, the lawyer was apparently ineligible to serve as a special deputy under section 20-1-201(c), C.R.S. 2023, because he did not meet all the statutory requirements. Eventually, the district attorney’s office realized this mistake, and, in 2018, the lawyer was appointed to serve as a part-time deputy district attorney. Working in that capacity, the lawyer helped to present evidence to a grand jury. In a thirty-one-count indictment, the grand jury indicted the officers. 
3 ¶ 7 In July 2019, the officers asked the court presiding over the criminal case to disqualify the lawyer from serving as part-time deputy district attorney. The court denied this motion, as well as an amended motion asking it to reconsider its decision to deny the original motion. The court also denied the officers’ request to call the lawyer as a defense witness. ¶ 8 The officers eventually each pled guilty to a single felony count. The court sentenced them to jail for ninety days, placed them on probation for ten years, and ordered them to pay restitution. ¶ 9 On July 17, 2022, the officers filed the complaint in this case against the lawyer and the law firm, claiming that the lawyer had committed the tort of abuse of process and that the law firm, via the doctrine of respondeat superior, was also liable for that tort. The attorney and the law firm asked the trial court to dismiss the complaint. ¶ 10 The court granted the motion to dismiss. As is pertinent to our analysis, the court decided that the officers had not timely filed their complaint under section 13-80-102(1)(a), C.R.S. 2023, which requires parties to file abuse of process claims within two years of 
4 when the cause of action accrues. In other words, the court decided that the officers’ abuse of process claim was barred by the statute of limitations. II. Statute of Limitations A. Standard of Review and Applicable Law ¶ 11 We review a trial court’s ruling on a motion to dismiss de novo. Hurtado v. Brady, 165 P.3d 871, 873 (Colo. App. 2007). A statute of limitations issue may be decided as a matter of law “where it is shown that the plaintiff discovered, or reasonably should have discovered, the alleged tortious conduct as of a particular date.” Colburn v. Kopit, 59 P.3d 295, 297 (Colo. App. 2002). ¶ 12 Tort actions for abuse of process “must be commenced within two years after the cause of action accrues.” § 13-80-102(1)(a). Such a claim accrues on the date when the plaintiff knew or should have known by the exercise of due diligence that the alleged abuse of process occurred. § 13-80-108(1), C.R.S. 2023; see also Colburn, 59 P.3d at 296-97. B. Analysis ¶ 13 The complaint raises two claims. 
5 ¶ 14 The first is that the lawyer committed the tort of abuse of process by “influenc[ing], induc[ing], and causing” the district attorney’s office to • “[i]mpanel a [g]rand [jury] to pursue indictments” against the officers; • “[u]nlawfully appoint” the lawyer as a special prosecutor; and • “[i]mproperly appoint” the lawyer to be the “de facto lead prosecutor before the grand jury . . . to consider criminal indictments based on the . . . same alleged conduct” that the lawyer had told the district attorney was “criminal conduct while acting in a private capacity on behalf of the alleged victims.” ¶ 15 Once the lawyer became the “de facto lead prosecutor,” this claim continued, he “continued to exploit and abuse this position to pursue criminal indictments against” the officers, “irrespective of a lack of evidence [to] . . . fulfill his ulterior purposes of using the criminal process to enrich himself and others, either directly or indirectly.” 
6 ¶ 16 The second claim alleges that the law firm was responsible for the lawyer’s alleged abuse of process under the doctrine of respondeat superior. ¶ 17 Our review of the record indicates that the officers were aware of the material facts on which they based the two claims more than two years before they filed their lawsuit on July 17, 2022. As we noted above, on July 19, 2019, they asked the court presiding over the criminal case to disqualify the lawyer from his position as a part-time deputy district attorney. In that motion, they argued that the lawyer was acting as an agent of the crime’s victim — Blue Ocean — because he had been paid by the investigator, who had, in turn, been hired by Blue Ocean, when he met with the elected district attorney. They wrote that the lawyer “has acted directly in the employ of an alleged victim here and then participated in discussions with law enforcement about the criminal charges and thereafter was appointed to prosecute this matter.” ¶ 18 The officers contend that they could not have discovered the nature of the lawyer’s prior involvement and conduct until July 17, 2020, when they received invoices from the law firm. They then assert that the invoices from the law firm revealed that the lawyer 
7 actively asked to become a special prosecutor while he was still working for Blue Ocean. But the motion to disqualify made the same point, as reflected in the language from the motion to disqualify the lawyer that we quoted in the preceding paragraph. ¶ 19 Accordingly, we conclude that the record supports the trial court’s decision to dismiss the officers’ claims against the lawyer and against the law firm because their lawsuit was filed after the statute of limitations had run. ¶ 20 Next, the officers ask us to vacate the trial court’s order awarding attorney fees and costs to the law firm. The officers do not develop this contention, so we will not address it. See Holley v. Huang, 284 P.3d 81, 87 (Colo. App. 2011). ¶ 21 Last, relying on C.A.R. 39.1, the lawyer and the law firm ask us to award them appellate attorney fees and costs. They say that the officers’ appeal was frivolous as filed because it did not “present any rational legal argument” and that it was frivolous as argued because the officers based their contentions on “egregious and demonstrably false statements.” We decline this request for the following reasons. 
8 ¶ 22 Focusing on the sole issue that we have resolved in this appeal — the officers’ contention that their claims were not barred by the statute of limitations — we conclude that the appeal was not frivolous as filed because we cannot say that the trial court’s ruling was “so plainly correct and the legal authority contrary to [the officers’] position so clear that there [was] really no appealable issue.” See Castillo v. Koppes-Conway, 148 P.3d 289, 292 (Colo. App. 2006)(quoting Dungaree Realty, Inc. v. United States, 30 F.3d 122, 124 (Fed. Cir. 1994)). And we conclude that the appeal was not frivolous as argued because, again zeroing in on the statute of limitations issue, we cannot say that the officers “commit[ted] misconduct in arguing the appeal.” See Martin v. Essrig, 277 P.3d 857, 862 (Colo. App. 2011). ¶ 23 The judgment is affirmed. JUDGE LIPINSKY and JUDGE SCHUTZ concur.